IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-55-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CHARLES J. PAYTON and | ) |
| RUBY PAYTON, | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on plaintiff's motion for summary judgment [DE 21] and defendants' motion for leave to file response [DE 27]. The motions are now ripe for adjudication. For the reasons stated herein, the plaintiff's motion for summary judgment is GRANTED and defendants' motion for leave to file is GRANTED.

## BACKGROUND

This is a suit filed by the United States seeking (1) to reduce to judgment federal income tax and civil penalty assessments made against Charles J. Payton ("Payton") and (2) to foreclose the related federal tax liens against real property located at 2381 Kay Road, Greenville, North Carolina ("the real property").

On October 12, 2001, a jury found Payton guilty of violating 18 U.S.C. § 371 (conspiracy to defraud the United States) and 26 U.S.C. § 7206(2) (willfully aiding or assisting preparing fraudulent tax returns). On March 20, 2002, Payton was sentenced to 6.5 years in prison and was ordered to pay $87,073 in restitution. On May 24, 2002, Payton transferred his home (which at the time of the conveyance was jointly owned with Ruby Payton ("Ruby") and was encumbered

with federal tax liens against Payton) after he had already committed the criminal acts as fraudulent tax preparer which would result in $155,000 of civil penalties, to Ruby for the sum of $10.

## DISCUSSION

Although termed a response, defendants essentially seek leave of the Court to file a surreply. Surreplies are not provided for in the Local Rules. *See* Local Rule 7. However, because defendants are proceeding pro se, the Court views their litigation activities in a different light than it might consider the filings of professional attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that courts must liberally construe pleadings by pro se plaintiffs). In light of the defendants pro se status, the Court grants their motion for leave to file and considers their proposed response in coming to its decision.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

2

It is clear from the briefing that none of the facts at hand are disputed. Rather, defendants take objection with nearly every legal conclusion the plaintiff urges the Court to reach. Although defendants take objection to the accuracy of some of the numbers plaintiff supplies, they offer no evidence that places the accuracy of the plaintiff's numbers into question.

I.  COUNT I.

An assessment is the official recording of the Secretary of the Treasury's determination that a taxpayer owes particular taxes, including interest, additions to tax, and assessable penalties, imposed by the Internal Revenue Code. 26 U.S.C. §§ 6201, 6203; *see Stallings v. United States*, 1993 WL 223098, *8 (E.D.N.C. Mar. 25, 1993). It is well settled that an assessment is entitled to a legal presumption of correctness. *See e.g., United States v. Janis*, 428 U.S. 433, 440 (1976); *United States v. Atkins*, 2009 WL 4459477, *2 (E.D.N.C. Sept. 30, 2009) (internal citations omitted). The presumption of correctness is procedural and transfers the burden of going forward with evidence to the taxpayer. *Cebollero v. Commissioner*, 967 F.2d 986, 990 (4th Cir. 1992).

Here, the evidence clearly shows that assessments have been made in the amounts identified in the certificates of assessments. [DE 21 Ex. 2-1–2-7]. The evidence also shows that there remains due and owing to the United States the sum of $246,277, as of December 2, 2013. [*Id.* at ex. 2-8–2-14]. Although defendants dispute the amount at issue and cite the difference between the amount cited in the complaint versus the amount cited in the motion for summary judgment, they have failed to overcome the presumption of correctness as plaintiff adequately explained that the difference in amounts was a result of payments made by defendants. Accordingly, the Court renders judgment in favor of the United States and against Charles J.

3

Payton with respect to his liability for delinquent income taxes for the periods 1997 and 1998, and delinquent civil penalties for the periods 1996, 1997, 1998, 1999, and 2000.

II. COUNT II.

The institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature of the delinquent, or in which he has any right, title, or interest, to the payment of such tax" is authorized by the Internal Revenue Code. 26 U.S.C. § 7403(a). "All persons having liens or claiming any interest in such action shall be made parties thereto." § 7403(b). The suit is a plenary action in which the Court "shall . . . adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." § 7403(c); *see generally United States v. Rodgers*, 461 U.S. 677, 680–82 (1983); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). A federal tax lien attaches to real property that a husband and wife hold jointly even though the other spouse is wholly innocent of that liability. *Rodgers*, 461 U.S. at 710–11.

Plaintiff offers two reasons why it should be able to enforce a lien against the real property that is currently in Ruby's name. First, it argues that Payton fraudulently transferred his interest in the real property to Ruby and therefore the transfer should be declared void. Alternatively, it argues that the evidence shows that Ruby is Payton's nominee and therefore the IRS's nominee lean against Ruby attaches to the real property and the United States should be permitted to foreclose its lien and sell the real property.

    A.    Fraudulent Transfer.

Summary judgment may be granted in fraudulent transfer cases based on an analysis of the "badges of fraud" pursuant to claims brought under N.C. Gen. Stat. § 39-23.4. *See Triangle Bank v. Eatmon*, 547 S.E.2d 92, 95–96 (N.C. App. 2001) ("Fraudulent intent may be established

4

by circumstances, and a close family relationship coupled with less than reasonable consideration and outstanding debts that the debtor is unable to pay is strong evidence of fraud."). A transfer can be set aside under North Carolina law if the transfer was made with actual intent to hinder, delay, or defraud a present or future creditor. N.C. Gen. Stat. § 39-23.4(a)(1). Section 39-23.4(b) provides a nonexclusive list of 13 badges of fraud that are considered in determining a debtor's fraudulent intent, eight of which are present in this case.

Here, Payton transferred the real property to his spouse, who is an "insider" which implicates the first badge of fraud. After the transfer, Payton retained possession or control of the real property as it is currently his place of residence, implicating the second badge of fraud. Before the transfer, there is no dispute that Payton had already committed the underlying criminal acts which would result in $155,000 in civil penalties, that the real property was encumbered by federal tax liens, and that Payton knew he owed an $87,073 restitution order, all of which implicate the fourth badge of fraud. At the time of transfer, the real property was the only known asset of Payton thus implicating the fifth badge of fraud. The transfer of the real property was a concealment of Payton's only known asset on its face which implicates the seventh badge of fraud. At the time of the transfer Payton was insolvent because he was incarcerated, had very limited earning capacity, and had no other known assets aside from the real property and thus transfer implicates the ninth badge of fraud. Payton transferred the real property two months after being convicted for willfully preparing false tax returns for others and incurring a 87,073 debt (the restitution order), implicating the tenth badge of fraud. Finally, Payton only received $10 of consideration for a home which Ruby estimates would sell for $260,000 to $290,000 which implicates the twelfth badge of fraud.

5

Defendants object to plaintiff's argument that the conveyance was fraudulent and attempt to rely on *Aman v. Walker*, 81 S.E. 162 (N.C. 1914), in combination with the statutory language in section 39-23.5(a). Although the IRS had not assessed the liabilities at the time of the transfer, the IRS's claim *arose* when Payton engaged in the illegal activity. While the transfer of real property for less than value *may* be deemed voluntary and valid in some instances the case at bar is not one of them. Taken together, the factors enumerated in section 39-23.4(b), as applied in this case, establish an intent by Payton to hinder, delay, or defraud the United States from collecting income taxes owed for 1997 and 1998, the civil penalties for 1996, 1997, 1998, 1999, and 2000, and the court-ordered restitution. As a result, Payton's transfer of his interest in the Kay Road property to Ruby must be set aside as fraudulent under North Carolina law. As a result, the Courts permits the foreclosure of the tax liens against the real property and the United States is permitted to sell the property and apply fifty percent of the proceeds to Payton's liabilities assessed in count I.

B.     Nominee Lien.

Even if the Court had not found that the transfer was fraudulent, the United States would still be permitted to foreclose on the Kay Road property. It is well-settled that the IRS may seek to proceed against a nominee or alter ego of a taxpayer for the "purpose of satisfying the taxpayer's obligations." *Lemaster v. United States*, 891 F.2d 115, 119 (6th Cir. 1989) (citing cases); *United States v. Holland*, 637 F. Supp. 2d 315 (E.D.N.C. 2009). "Focusing on the relationship between the taxpayer and the property, the [nominee] theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the

6

benefits of being the true owner." *Richards v. United States (In Re Richards)*, 231 B.R. 571, 578 (E.D. Pa. 1999).

The factors to consider when determining whether Ruby is Payton's nominee are" (1) "the treatment by the taxpayer of the asset as his own;" (2) "control over the [nominee] by the taxpayer or a close relationship between them;" (3) "use of the [nominee's] funds to pay personal expenses of the taxpayer;" (4) "transfer of property to the [nominee] for a nominal sum;" (5) "the fact that the [nominee] supported the taxpayer;" (6) "whether the taxpayer expended personal funds for the property;" (7) "whether the taxpayer enjoys the benefits of the property;" and (8) "whether the record titleholder interfered with the taxpayer's use of the property." *Holland*, 637 F. Supp. 2d at 320 (*citing United States v. Greer*, 383 F. sup. 2d 861, 868 (W.D.N.C. 2005)).

Applying these factors to the present matter, the evidence establishes that Ruby is Payton's nominee because (1) Payton resides at the Kay Road property; (2) Payton is married to the Ruby; (3) Ruby does not charge Payton rent or require him to pay for any maintenance on the home; (4) and (5) Payton transferred his fifty percent ownership of his home, self-valued at over $260,000, to Ruby for $10; (6) Payton and Ruby purchased the property together in 1991; (7) Payton pays all of the monthly utilities; (8) and (9) Payton enjoys the benefit of the real property because he resides in the home rent free with no limits on his movements within the home, and (10) Ruby does not interfere with Payton's use of the real property.

Although defendants object that all of the above circumstances are merely the consequence of a married couple living together, this objection does not change the legal conclusion that Ruby is Payton's nominee. While it is certainly possible that the transfer of the real property was merely a voluntary gift between immediate family members, the circumstances here, viewed as a whole, do not support any other conclusion besides the one that Ruby was

7

Payton's nominee and the United States is permitted to foreclose on its nominee lien against the real property and sell the real property with fifty percent of the proceeds to go to Ruby and fifty percent of the proceeds to be applied to Payton's liabilities.

## CONCLUSION

For the foregoing reasons, defendants' motion for leave to file is GRANTED and plaintiff's motion for summary judgment is GRANTED. Judgment is RENDERED in favor of the United States and against defendant Charles J. Payton in the amount of $246,277 plus penalties, interest and statutory additions accruing after December 2, 2013 according to law. It is hereby DECLARED, under North Carolina law, that Charles Payton's transfer of the real property to defendant Ruby Payton was fraudulent and is VOID; that Ruby Payton is Charles Payton's nominee; and that the United States' tax liens attach to the real property. Judgment is RENDERED that the tax liens are foreclosed and the real property is allowed to be sold with fifty percent of the proceeds going to Ruby Payton and fifty percent of the proceeds going to Charles Payton's outstanding liabilities.

SO ORDERED.

This the _2_ day of February, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE